**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. NORMA G. GALINDO, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.  15-CV-346-JED-PJC |
| ) | |
| 1. PRICE EDWARDS & COMPANY, d/b/a ) | JURY TRIAL DEMANDED |
| Pomeroy Park Apartments, a domestic ) | |
| partnership, ) | |
| ) | ATTORNEY'S LIEN CLAIMED |
| Defendant. ) | FOR THE FIRM |

## COMPLAINT

COMES NOW the Plaintiff, Norma G. Galindo, ("Plaintiff"), through undersigned counsel, and hereby submits the following Complaint against Price Edwards & Company, ("Defendant"), and does state and allege as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §1343(a)(4) and 28 U.S.C. §1331. Jurisdiction is also invoked pursuant to 28 U.S.C. § 1367, for any supplemental state law claims.

2. This action arises under 42 U.S.C. §2000e and the laws of the State of Oklahoma.

3. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. §2202, as are compensatory and punitive damages.

4. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil and the above statutes.

5. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. §1391(c), as the claims herein arose in this judicial district.

### PARTIES

6. Plaintiff was at all times hereinafter mentioned, domiciled in and a citizen of the State of Oklahoma, and is a Hispanic female.

7. Plaintiff is an "employee" as that term is defined by Title VII.

1

8. Defendant was and is now existing under the laws of the State of Oklahoma, and is, and was at all times hereinafter mentioned, qualified to do and to transact business in the City of Tulsa, Tulsa County, State of Oklahoma.

9. Defendant is an "employer" as that term is defined by Title VII in that, at the relevant times, it employed in excess of 15 full- and part-time employees in each of twenty or more calendar weeks.

10. In conformance with Title VII statutory prerequisites, Plaintiff filed a Charge of Discrimination with the EEOC, on or about April 29, 2014. The EEOC issued a Right to Sue letter on May 14, 2015, (attached as Exhibit "1" and hereby incorporated by reference as though fully set forth herein) which was not received by Plaintiff until June 3, 2015.

11. At all times relevant to this cause of action, Plaintiff was a "qualified beneficiary" for the purposes of COBRA continuation coverage, as defined by 29 U.S.C. § 1162.

12. At all times relevant to this cause of action, Plaintiff was a "beneficiary" as defined by relevant Federal law, specifically COBRA, and was entitled to notice of the right to elect continuation coverage of health insurance under COBRA.

13. At all times relevant to this cause of action, Plaintiff was covered under a health plan provided by Defendant until her "qualifying event," i.e., termination, occurred and Plaintiff was removed from coverage under Defendant's health plan. Plaintiff was not terminated "for cause" as that phrase is defined by COBRA.

14. More than 44 days have elapsed since Plaintiff's "qualifying event" and Defendant has failed to provide the requisite COBRA notices required by law to Plaintiff it is required to do.

15. At all times relevant to this cause of action, Defendant was an "employer" within the meaning of the 40 Okla. Stat. Ann. §§ 165.1, *et seq*.

16. At all times relevant to this cause of action, Plaintiff was an "employee" within the meaning of 40 Okla. Stat. Ann. §§ 165.1, *et seq*., and is therefore entitled to the protections afforded by the Oklahoma Protection of Labor Act, and has standing under that law to maintain this

action.

## OPERATIVE FACTS

17. Plaintiff was subjected to gender discrimination and retaliation during her employment with Defendant and her employment was constructively terminated due to the discriminatory acts of Defendant and its agents and/or employees.

18. Plaintiff was initially hired by Defendant on or about February 8, 2013 as a Leasing Agent at Pomeroy Park Apartments in Tulsa, OK.

19. At the time Plaintiff was hired, she was informed by Defendant's agents and/or employees that she would be compensated at $10.50 per hour plus commissions of $100.00 per new lease and $25.00 per renewal lease that she obtained.

20. Plaintiff's employment with Defendant proceeded as normal until approximately July 8, 2013. On this date, the Assistant Manager of Pomeroy Park Apartments, Gayle Beam, sent an email out to the office, including Plaintiff, which was blatantly derogatory towards "illegal immigrants." The email stated, in part, "And have you noticed that if you rearrange the letters in 'illegal immigrants,' and add just a few more letters, it spells: 'Go home you free-loading, benefit-grabbing, resource-sucking, baby-making, non-English-speaking jackasses and take those other hairy-faced, sandal-wearing, bomb-making, camel-riding, goat-loving, raggedy-ass foreigners with you.'"

21. Plaintiff forwarded this email to Becky Seacock, Vice President, and Lawrie Tunnel, Human Resources Director, and stated her displeasure at having received the email. After Plaintiff complained, both the Manager, Melba Staudt, and Assistant Manager, Ms. Beam, were terminated and Plaintiff was advised to just put the events behind her.

22. However, Plaintiff immediately observed a change in the way both the maintenance staff at the facility and corporate employees interacted with her. Prior to complaining about the email, these employees displayed a friendly demeanor towards Plaintiff and were always willing to assist her in resolving tenant issues that arose or answered her questions. After her

complaints, however, these employees were openly hostile towards Plaintiff and displayed anger towards her for no apparent reason.

23. After approximately one week, Defendant brought in new management staff, in that Tracy Blacken Baker began serving as Manager and Linda Newton began serving as the Assistant Manager at the facility.

24. Shortly thereafter, Plaintiff had significant responsibilities and duties removed from her purview. By way of example, Plaintiff was no longer permitted to order carpet, was not permitted to schedule carpet cleaning or otherwise communicate with vendors on behalf of the residents as she had done in the past. Additionally, Plaintiff was no longer permitted to conduct walk-through with residents or potential residents.

25. The hostility Plaintiff was facing, coupled with the removal of key responsibilities, caused her to become severely depressed and she was taken off work by her physician for approximately two weeks.

26. When Plaintiff returned from her leave, she was informed by Ms. Blacken Baker that her keys to the office were being taken away from her and would not be returned.

27. Over the next few weeks, when Plaintiff would approach Ms. Blacken Baker about resident needs or issues, one of the duties of her position, she was screamed at and told "I don't have time for those nigger's or Mexican's problems right now, schedule an appointment for them." However, when Plaintiff did schedule the appointment, Ms. Blacken Baker would either refuse to meet with the resident or cut them off mid-sentence and ignore what the resident was trying to say to her.

28. As time progressed, Ms. Blacken Baker began screaming at Plaintiff in front of residents, customers and staff or would otherwise ridicule her and/or belittle her in the presence of others.

29. Ms. Blacken Baker also began a practice of changing Plaintiff's work schedule, sometimes without notice, and would not permit Plaintiff to eat lunch as other staff members were

allowed to. On one occasion, Ms. Blacken Baker threw Plaintiff's lunch away and screamed at her for attempting to eat.

30. In August of 2013, Plaintiff completed a significant number of new and renewal leases. The commissions for those leases did not appear on Plaintiff's check properly and she inquired with Ms. Blacken Baker as to why she had not received credit for all of the leases she had completed. Ms. Blacken Baker's response was that the leases were split amongst all of the staff. However, prior to this, Plaintiff had confirmed that credits for leases and renewal leases had not changed and she would still receive $100.00 for ever new lease and $25.00 for every renewal lease she completed.

31. Upon information and belief, Plaintiff was not paid for 25 new leases and 107 lease renewals that should have been credited to her prior to her termination.

32. When Plaintiff inquired with Ms. Blacken Baker as to why her leases had been split with other staff, Ms. Blacken Baker stated "I am the Manager and decide what needs to be done. If you don't like it, call corporate."

33. On or about September 26, 2013, after having taken as much abuse as she could, Plaintiff informed Ms. Blacken Baker that she as resigning. Ms. Blacken Baker's response was to laugh and state, "It's for the best." Plaintiff handed Ms. Blacken Baker the key she had been permitted to borrow to Ms. Blacken Baker, who promptly threw it over her head. Plaintiff again inquired as to the status of her unpaid lease commissions and was told to take it up with corporate.

34. Upon resignation, Plaintiff was not permitted to clear out her desk, was informed that she was banned from the property and was escorted out of the office by Ms. Blacken Baker, who had a large smile on her face at the time.

35. At the time of her resignation, Plaintiff completed and submitted a request for reimbursement of the money she had submitted to her employee Christmas account. To date, she has not been reimbursed those funds.

36. Subsequent to her resignation, Plaintiff submitted a demand for payment of all wages due her to Defendant's H.R. Director, Lawrie Tunnel. Plaintiff was informed that the money would not be released to her unless she agreed to sign a waiver and release of claims against the company.

37. Defendant's refusal to do anything to correct the race discrimination, and the subsequent retaliatory conduct of Defendant's agents and/or employees, caused Plaintiff great emotional and physical distress during Plaintiff's employment and resulted in her resignation.

38. As a direct result of the extreme and outrageous treatment to which Plaintiff was subjected by Defendant, Plaintiff has suffered physical and emotional symptoms that continue through the present.

## FIRST CLAIM FOR RELIEF
## (RACE DISCRIMINATION IN VIOLATION OF TITLE VII)

39. For the First Claim, Plaintiff re-alleges and incorporates by reference the foregoing paragraphs and states:

40. That, as a member of a protected class, to wit: Hispanic, Plaintiff is protected by the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

41. That the disparate treatment of Plaintiff by Defendant and its employees and/or agents was a direct result of discrimination on the basis of her race as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

42. That Plaintiff was unfairly treated and that the motivating reason for this treatment was based on her race, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

43. That Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice of the circumstances or by allowing the acts to occur after receiving actual or constructive notice of those acts;

44. That the conduct complained of constitutes illegal race discrimination in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant was in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars($100,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

## SECOND CLAIM FOR RELIEF
## (HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII)

45. For the Second Claim, Plaintiff re-alleges and incorporates by reference the foregoing paragraphs and states:

46. That Plaintiff was subjected to discriminatory conduct, and that the motivating reason for this treatment was based on her race, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.;

47. That said conduct has had the purpose or effect of unreasonably interfering with Plaintiff's work performance;

48. That said conduct created an intimidating and hostile working environment for Plaintiff;

49. That said conduct was repeated frequently while Plaintiff was employed by Defendant;

50. That Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice of the circumstances by Plaintiff or by allowing the acts to occur after receiving actual or constructive notice of those acts.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars($100,000.000); costs and expenses,

including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF TITLE VII)

51. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

52. That as a direct and proximate result of Plaintiff's protected act of reporting the discrimination Plaintiff was subjected to by Defendant's agents and/or employees, Plaintiff was retaliated against by Defendant.

53. By and through, but not limited to, the events described above, Plaintiff's terms and conditions of employment were adversely affected due to the on-going retaliation directed towards Plaintiff.

54. As a direct and proximate result of said actions by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of One Hundred Thousand Dollars($100,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### (VIOLATION OF THE OKLAHOMA WAGE AND HOUR LAWS)

55. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and

would further state as follows:

56. At all times relevant to the filing of this cause of action, 40 O.S. §§ 165.9 *et seq.* prohibited an employer from refusing to pay wages earned by an employee.

57. Defendant refused to pay the full amount of bonuses earned by Plaintiff throughout her employment and refused to reimburse Plaintiff for the wages she had deposited in her Christmas account.

58. The aforementioned refusal was in direct violation of 40 O.S. §§ 165.1 *et seq.*

59. As a direct and proximate result of Defendant's willful violation of 40 O.S. §§ 165.1, *et seq.*, Plaintiff has suffered, and continues to suffer, loss of income in an amount in excess of $10,000.00.

60. Pursuant to 40 O.S. § 165.9, Plaintiff is also entitled to liquidated damages for Defendant's failure to pay wages; costs and fees of any nature; and reasonable attorneys fees for bringing this action.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of unpaid wages; liquidated damages; costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

### FIFTH CLAIM FOR RELIEF
### (FAILURE TO PROVIDE COBRA CONTINUATION NOTICE)

61. Plaintiff incorporates and re-alleges the above paragraphs as though fully set forth herein and would further state as follows:

62. Defendant failed to provide Plaintiff with her COBRA election notices in violation of 29 U.S.C. § 1661, *et seq.* within the time frame established by COBRA.

63. Plaintiff's termination constitutes a qualifying event, entitling her to a COBRA election notice under 29 U.S.C. § 1661, *et. seq.*

64. Prior to Plaintiff's termination, she was enrolled in the health care benefits program provided by Defendant.

65. Defendant failed to abide by the express statutorily imposed duty to notify Plaintiff of her rights under COBRA, thus giving rise to the penalty provisions codified in section 502(c)(1) of ERISA for its failure to provide the requisite COBRA election notices.

66. Defendant is liable for damages to compensate Plaintiff for the prejudice and harm she has endured as a result of Defendant's failure to provide their COBRA election rights in a timely manner in that she was unable to receive medical care and treatment for certain per-existing health conditions suffered during the time in questions and relevant to this complaint.

**WHEREFORE**, premises considered, Plaintiff prays for this Court to declare the conduct of Defendant to be in violation of the Consolidated Omnibus Reconciliation Act, 29 U.S.C. §§ 1161-1168, and Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 11332(c)(1); enter judgment against Defendant for civil penalties and consequential damages, out-of-pocket medical expenses, prejudgment interest, an assessment of damages to compensate for any tax consequences of this judgment, a reasonable attorney fee, and the costs of this action, to be taxed against Defendant, and any other relief this Honorable court shall deem proper and just.

Respectfully submitted,

ARMSTRONG & VAUGHT, P.L.C.

 */s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
2727 East 21st Street, Suite 505
Tulsa, Oklahoma 74114
(918) 582-2500
(918) 583-1755 (facsimile)
cvaught@a-vlaw.com
**Attorney for Plaintiff**